ATTORNEY FOR APPELLANT
Kimberly A. Jackson
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
Steve Carter
Attorney General of Indiana

Nicole M. Schuster
Deputy Attorney General
Indianapolis, Indiana

# In the
# Indiana Supreme Court

_____

No. 52S02-0412-CR-510

HERSHEL HAMMON,

*Appellant (Defendant below),*

v.

STATE OF INDIANA,

*Appellee (Plaintiff below).*

_____

Appeal from the Miami Circuit Court, No. 52C01-0302-CM-57
The Honorable Rosemary Higgins Burke, Judge

_____

On Petition To Transfer from the Indiana Court of Appeals, No. 52A02-0308-CR-693

_____

**June 16, 2005**

**Boehm, Justice.**

The Sixth Amendment as interpreted by the United States Supreme Court in Crawford v. Washington, 541 U.S. 36 (2004), prohibits the introduction in a criminal trial of testimonial statements where the defendant had no opportunity to cross examine the person who made the statements. We hold that statements to investigating officers in response to general initial inquiries are nontestimonial but statements made for purposes of preserving the accounts of potential witnesses are testimonial. More generally, we conclude that testimonial statements are those where a principal motive of either the person making the statement or the person or organization receiving it is to preserve it for future use in legal proceedings.

## Facts and Procedural History

At 10:55 p.m. on February 26, 2003, Peru Police Department Officers Jason Mooney and Rod Richard went to the Hammons' home in response to a reported domestic disturbance. When the officers arrived, the alleged victim, Amy Hammon, was on the front porch. Mooney testified that Amy appeared to be "somewhat frightened." When he asked whether there was a "problem" or "anything was going on" she answered "No. . . . nothing was the matter" and that "everything was okay."

After receiving permission from Amy to enter the house, Mooney found a gas heating unit in the corner of the living room with fragments of its glass front on the floor and flames emerging from the resulting cavity. Hershel Hammon, Amy's husband, was in the kitchen. In response to Mooney's inquiry as to what had happened, Hershel stated that he and his wife had "been in an argument" but "everything was fine now" and the argument "never became physical." Officer Richard remained with Hershel in the kitchen while Mooney returned to the porch and again asked Amy what had occurred. Mooney testified that:

> She informed me that she and Hershel had been in an argument. That he became irrate [sic] over the fact of their daughter going to a boyfriend's house. The argument became . . . physical after being verbal and she informed me that Mr. Hammon, during the verbal part of the argument was breaking things in the living room and I believe she stated he broke the phone, broke the lamp, broke the front of the heater. When it became physical he threw her down into the glass of the heater . . . .
> She informed me Mr. Hammon had pushed her onto the ground, had shoved her head into the broken glass of the heater and that he had punched her in the chest twice I believe.

Mooney then requested Amy to fill out and sign a battery affidavit reciting these allegations, and she complied.[1]

The State charged Hershel with Domestic Battery and also alleged that the battery violated the terms of his probation. The trial court consolidated Hershel's probation violation hearing and a bench trial on a domestic battery charge. The trial court explained that a

---

[1] The affidavit stated that Hershel: "Broke our furnace and shoved me down on the floor into the broken glass and hit me in the chest and threw me down. Broke our lamps and phone. Tore up my van where I couldn't leave the house. Attacked my daughter."

preponderance of the evidence standard of proof would apply in evaluating the probation violation and a reasonable doubt standard would govern the domestic battery charge. Although the prosecutor had subpoenaed Amy, she was not present at the consolidated proceeding. Over Hershel's objections, Officer Mooney's testimony reporting Amy's oral statements was admitted under the excited utterance exception to the hearsay rule and Amy's affidavit was admitted as a present sense impression. The only other evidence was brief testimony by the secretary of the probation department establishing Hershel's probation status. The defense offered no evidence.

At the conclusion of the consolidated proceeding, Hershel was convicted of Domestic Battery and found to have violated parole based on the facts recited in the affidavit and in Mooney's account of Amy's statements to him. Hershel was sentenced to one-year imprisonment, with all but twenty days suspended. He was also instructed to complete a drug and alcohol evaluation, and a counseling program. Finally, the trial court allowed Hershel's $300.00 cash bond to be applied to administrative fees and the costs of his representation by a public defender.[2]

On appeal, the Court of Appeals upheld the court's admission of Amy's statements to Officer Mooney under the hearsay exception for excited utterances. Hammon v. State, 809 N.E.2d 945, 949 (Ind. Ct. App. 2004). The Court of Appeals did not decide whether the affidavit was properly admitted, reasoning that the issue was academic because the affidavit was cumulative of Mooney's testimony and therefore harmless, if error at all. Id. at 948 n.1. We granted transfer. Hammon v. State, 2004 Ind. LEXIS 1031 (Ind. Dec. 9, 2004).

**Out of Court Statements as Evidence**

This case presents an all too familiar scenario: the police respond to a report of domestic violence, an apparent victim reports a battery, and the victim then does not testify at trial for

---

[2] The State concedes that the trial court improperly retained Hershel's bond. The bond was a full cash bond, not a 10% deposit. The Court of Appeals reversed the trial court, agreeing with the State that Indiana Code section 35-33-8-3.2(a)(1) governing full cash bonds does not include the authority conferred in subsection (a)(2) to apply 10% deposit bonds to administrative costs. Hammon v. State, 809 N.E.2d 945, 953 (Ind. Ct. App. 2004). The State does not challenge this ruling here, and we summarily affirm the Court of Appeals on that issue. Ind. Appellate Rule 58(a)(2).

reasons that are not conclusively documented in the record.[3]  This fact pattern has historically presented troubling issues under state rules of evidence.  As a result of the recent decision of the Supreme Court of the United States in Crawford v. Washington, 541 U.S. 36 (2004), we now must address the issue under both the Indiana Rules of Evidence and the Confrontation Clause of the Sixth Amendment to the Constitution of the United States.

## I. Excited Utterance

Amy's statements to Mooney were admitted to establish the truth of the matters asserted, notably that Hershel had hit her and thrown her down.  Accordingly, the statements are inadmissible hearsay unless an exception applies.  In this case the trial court found Amy's statements to be "excited utterances" admissible under Indiana Evidence Rule 803(2).

The rules of most other jurisdictions include a provision similar to Federal Rule of Evidence 807, which allows hearsay not specifically admissible under one of the listed exceptions found in Rules 803 and 804 if it has "equivalent circumstantial guarantees of trustworthiness" and (A) "is offered as evidence of a material fact;" (B) "is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts;" and (C) "the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence."  The proponent of the statement must provide sufficient notice to the adverse party before the statement can be used in a trial or hearing.  Fed. R. Evid. 807.

The Indiana Rules of Evidence have no counterpart to this residual exception.  As a result, the Indiana "excited utterance" exception has been interpreted broadly to permit admission of statements deemed trustworthy.  For a hearsay statement to be admitted as an excited utterance three elements must be shown: (1) a startling event; (2) the declarant made the

---

[3] Amy wrote to the court with respect to Hershel's sentencing:  "In answer to your letter there has been no damages or bills.  As for sentencing, I would like my husband, Hershel Hammon, to receive counceling [sic] and go to AA, because it has helped him in the past.  I would like to see him put on probation to ensure that it happens and where he can still work to help financially and be here to help with our children.  I also need his help around the house for we're remodeling the house and plan to sell it so we can move out of town.  I love my husband, I just want to see him stop drinking.  I do not feel threatened by his presence."

statement while under the stress of excitement caused by the event; and (3) the statement relates to the event. Yamobi v. State, 672 N.E.2d 1344, 1346 (Ind. 1996). In Yamobi we stated:

> While a declaration is generally less likely to be admitted if it is made long after the startling event, the amount of time that has passed is not dispositive . . . . [T]he central issue is whether the declarant was still under the stress of excitement caused by the startling event when the statement was made.

Id. (citations omitted). Admissibility turns on "whether the statement was inherently reliable because the witness was under the stress of an event and unlikely to make deliberate falsifications." Davenport v. State, 749 N.E.2d 1144, 1148 (Ind. 2001). Indiana appellate courts have found the exception available for statements made as much as thirty minutes after the event where the declarant was shot on the street and remained there wounded until police arrived. See, e.g., Yamobi, 672 N.E.2d at 1346-47. Under less stressful circumstances we have expressed doubt that such a lengthy period would qualify. See, e.g., Davenport, 749 N.E.2d at 1149 ("It seems somewhat of a stretch to conclude that a statement [by a witness] one half-hour after the discovery of the body was still made under the stress of the startling event.").

Whether a statement constitutes an excited utterance is essentially a factual issue subject to a clearly erroneous standard of review, sometimes described as the functional equivalent of abuse of discretion. Id. at 1148. In this case, the Court of Appeals affirmed the trial court based on Officer Mooney's observations that a "startling event occurred at the residence before the police arrived," and Amy's "timid" and "frightened" appearance when the police first saw her. Hammon, 809 N.E.2d at 949. It is unclear precisely how much time had passed between the event and the statement, but a prompt police response was a reasonable inference from this record, and it is for the trial court to evaluate the credibility of Mooney's perceptions of Amy's stressed state. We agree that the trial court could properly infer that Amy's initial reports to Mooney were made while Amy was still under the stress of the alleged domestic violence and were unlikely to constitute an unreliable response. Accordingly, it was admissible evidence insofar as state law is at issue here.

## II. Confrontation Clause

Until Crawford was handed down, the foregoing conclusion under Evidence Rule 803 would resolve this case. Crawford expressly overruled Ohio v. Roberts, 448 U.S. 56, 66 (1980),

which had held that the Sixth Amendment's Confrontation Clause was satisfied if a statement, though hearsay, was admitted under a "firmly rooted" exception to the hearsay rule. 541 U.S. at 67. Crawford makes clear that in a criminal prosecution any hearsay permitted under the rules of evidence is also subject to the defendant's right "to be confronted with the witnesses against him" under the Sixth Amendment to the United States Constitution. Id. at 38. As explained below, we take Crawford to hold that, at a minimum, the Sixth Amendment prohibits use of "testimonial" statements without the opportunity to cross-examine. Thus, no matter how "firmly rooted" the excited utterance exception may be, if an utterance is "testimonial," it is admissible only if "the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine." Id. at 59. Crawford thus makes clear that confrontation, not reliability, is the key to the Sixth Amendment right, which applies in state courts through the Fourteenth Amendment. Douglas v. Alabama, 380 U.S. 415, 418 (1965). Because it turns only on confrontation, Crawford bars admission of some forms of out of court statements that have been viewed as sufficiently reliable to be admissible under Rules of Evidence.[4]

In this case it is not clear whether the declarant, Amy, was "unavailable" when she did not appear at trial after she had been subpoenaed. It is clear that the defendant, Hershel, did not have an opportunity to cross-examine Amy about her statements admitted through both the officer's testimony and her affidavit. Therefore, if either Amy's statement to Officer Mooney or

---

[4] Crawford cited "confessions" as an example of testimonial statements that are inadmissible without cross-examination. 541 U.S. at 51. Historically, confessions have been viewed as reliable, typically as against penal interest. Some forms of sworn testimony have also been viewed as sufficiently reliable. See, e.g., Bintz v. Bertrand, 403 F.3d 859, 867 (7th Cir. 2005); Mungo v. Duncan, 393 F.3d 327, 335-36 (2d Cir. 2004); United States v. Massino, 319 F. Supp. 2d 295, 298-99 (E.D.N.Y. 2004). Because we conclude that the nontestimonial statements made in this case are sufficiently reliable, we do not address whether, after Crawford, the Sixth Amendment still bars admission of nontestimonial hearsay if it is deemed unreliable. Compare United States v. Hendricks, 395 F.3d 173, 179 (3d Cir. 2005) ("unless a particular hearsay statement qualifies as 'testimonial,' Crawford is inapplicable and Roberts still controls."); United States v. Holmes, 406 F.3d 337, 348 (5th Cir. 2005) ("With respect to nontestimonial statements, however, Crawford leaves in place the Roberts approach to determining admissibility."), with United States v. Saget, 377 F.3d 223, 227 (2d Cir. 2004) ("[W]hile the continued viability of Roberts with respect to nontestimonial statements is somewhat in doubt, we will assume for purposes of this opinion that its reliability analysis continues to apply to control nontestimonial hearsay, and that our precedents applying the Roberts analysis to such statements retain their force."); Edward J. Imwinkelried, The Treatment of Prosecution Hearsay Under *Crawford v. Washington*: Some Good News But . . ., The Champion, Oct. 2004, at 16, 18 ("The [Crawford] majority's harsh criticism of Roberts' reliability standard makes it even more likely that the Court will eventually relax the standard for admitting nontestimonial hearsay.").

her affidavit is "testimonial" then that evidence was not admissible against Hershel in his criminal trial, even though it qualifies for a hearsay exception and passes tests of reliability.

### A. Crawford v. Washington

The Confrontation Clause of the Sixth Amendment provides that, "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." Crawford held that the defendant's confrontation right precluded admission of a taped police interview of the defendant's wife where state law prevented the wife from testifying.[5] Exclusion of this evidence was based solely on the inability of the defendant to examine the wife. The only issue was whether the statement was admissible in evidence under those circumstances. There was no misconduct alleged on the part of either the wife or the officers who conducted the interview, and no suggestion that use of the interview was improper for any purpose other than evidence at the defendant's criminal trial.

In Crawford, the majority noted that the meaning of "witnesses against" was ambiguous, and thus looked to history as an aid to interpreting the Confrontation Clause. 541 U.S. at 51. No Justice objected to this methodology. The Court began with a discussion of English common law, including the treason trial of Sir Walter Raleigh[6] and the bill of attainder against Sir John Fenwick.[7] Id. at 43-47. The Court then charted the background of the Sixth Amendment's inclusion in the Constitution and discussed the early cases interpreting the Amendment. Id. at 53-59. From this history the Court drew two inferences as to the breadth of the Sixth Amendment: 1) "the principal evil at which the Confrontation Clause was directed was the civil-law mode of criminal procedure, and particularly its use of *ex parte* examinations as evidence

---

[5] According to the briefs filed in the United States Supreme Court, Crawford's wife was mirandized and interviewed by two police officers at the stationhouse. Although the transcript of the interview is not explicit on these points, it seems clear that no one else was present, and the recording was by audio tape and was not under oath.

[6] See Raleigh's Case, 2 How. St. Tr. 1, 15-16, 24 (1603). In Raleigh's trial for high treason, a letter written by Raleigh's alleged co-conspirator, Lord Cobham, implicated both Cobham and Raleigh. Cobham had also been examined in camera by the Privy Council and both the letter and his examination were introduced as evidence against Raleigh. Crawford, 541 U.S. at 43.

[7] See Fenwick's Case, 13 How. St. Tr. 537, 591-92 (H. C. 1696) (Powys). Sir John Fenwick's counsel objected to admitting the pretrial examination of a witness who had been "spirited away," on the ground that Fenwick had no opportunity to cross-examine the witness. The examination was nonetheless admitted and Fenwick was condemned. Crawford, 541 U.S. at 46.

against the accused;" and 2) "the Framers would not have allowed admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." Id. at 50-51.

It has been observed that the Court did not definitively resolve whether any statements that are not testimonial are nevertheless subject to Sixth Amendment restraints, and if so, what form those statements might take.[8] As the Court put it, "even if the Sixth Amendment is not solely concerned with testimonial hearsay, that is its primary object." Id. at 53. We think, however, that the thrust of the Court's opinion in Crawford, and the basis on which we proceed, is that testimonial statements trigger Sixth Amendment confrontation rights. The Court gave several indications that only testimonial statements implicate the Sixth Amendment. The Court expressly noted, "not all hearsay implicates the Sixth Amendment's core concerns." Id. at 51. The Court's discussion following this observation seems to us to assume that these "core concerns" are testimonial statements and only those are excludable on Sixth Amendment grounds. In addition, the Court reconciled the historical presence of hearsay exceptions with its view of the Confrontation Clause by pointing out that, with the exception of dying declarations, "there is scant evidence that exceptions were invoked to admit *testimonial* statements against the accused in a *criminal* case."[9] Id. at 55 (emphasis in original). In subsequent discussion the Court expressly noted that although White v. Illinois, 502 U.S. 346 (1992), rejected the notion that only testimonial statements implicate the Confrontation Clause, Crawford's analysis "casts doubt on that holding." Id. at 61. And in conclusion the majority again expressly refrained from ruling on the point, but nevertheless observed, "Where nontestimonial hearsay is at issue, it is

---

[8] "[T]he decision did not define what constitutes testimony . . . [and] [p]erhaps more significantly, the Court failed to instruct conclusively whether any *non*testimonial statements receive the protection of the Confrontation Clause." The Supreme Court 2003 Term, 118 Harv. L. Rev. 25, 321-22 (2004) (emphasis in original).

[9] See also Crawford, 541 U.S. at 53-54, focusing on the Framers after reviewing English, Colonial, and early American experience:

> The historical record also supports a second proposition: that the Framers would not have allowed admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination. The text of the Sixth Amendment does not suggest any open-ended exceptions from the confrontation requirement to be developed by the courts. Rather, the "right . . . to be confronted with the witness against him," . . . is most naturally read as a reference to the right of confrontation at common law, admitting only those exceptions established at the time of the founding.

wholly consistent with the Framers' design to afford the States flexibility in their development of hearsay law." Id. at 68. In any event, whether some nontestimonial statements may be subject to Sixth Amendment limitations is not before us today. This case turns on whether Amy's statements or her affidavit were "testimonial."

A precise definition of testimonial responses is yet to be worked out, but Crawford identified some core forms of testimony:

> Whatever else the term covers, it applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial, and to police interrogations. These are the modern practices with closest kinship to the abuses at which the Confrontation Clause was directed.

Id. The Court also cited with apparent approval a formulation of testimonial statement as one that an "objective witness reasonably [would] believe . . . would be available for use at a later trial." Id. at 52. Although the Court identified these "core forms," the Court expressly left "for another day," and therefore left it to us and other courts across the United States to identify the boundaries, if any, of "testimonial" statements. Id. at 68.

B. *The Court of Appeals' Opinion in this Case*

The Court of Appeals concluded, "that the common denominator underlying the Supreme Court's discussion of what constitutes a 'testimonial' statement is the official and formal quality of such a statement." Hammon, 809 N.E.2d at 952. Accordingly, the court reasoned that the Supreme Court limited its holding in Crawford to "police 'interrogation,'" which "carries with it a connotation of an at least slightly adversarial setting." Id. The Court of Appeals held that "when police arrive at the scene of an incident in response to a request for assistance and begin informally questioning those nearby immediately thereafter in order to determine what has happened, statements given in response thereto are not 'testimonial.'" Id. This conclusion has been cited for the proposition that "[p]reliminary questions asked at the scene of a crime shortly after it has occurred do not rise to the level of an 'interrogation.' Such an unstructured interaction between officer and witness bears no resemblance to a formal or informal police inquiry that is required for a police interrogation as that term is used in Crawford." People v. Corella, 18 Cal. Rptr. 3d 770, 776 (Cal. Ct. App. 2004) (citing Hammon). Accord State v. Veesenmeyer, 2005 Minn. App. LEXIS 287, *10 (Minn. Ct. App. March 15, 2005) (citing

9

Hammon); State v. Alvarez, 107 P.3d 350, 355 (Ariz. Ct. App. 2005) (citing Hammon); Lopez v. State, 888 So. 2d 693, 699 (Fla. Dist. Ct. App. 2004) (citing Hammon); State v. Wright, 686 N.W.2d 295, 302 (Minn. Ct. App. 2004) (citing Hammon).

In another frequently cited passage, the Court of Appeals stated that "the very concept of an 'excited utterance' is such that it is difficult to perceive how such a statement could ever be 'testimonial.' . . . An unrehearsed statement made without time for reflection or deliberation, as required to be an 'excited utterance,' is not 'testimonial' in that such a statement, by definition, has not been made in contemplation of its use in a future trial." Hammon, 809 N.E.2d at 952-53. The Court of Appeals has repeated this view in three other published opinions. Beach v. State, 816 N.E.2d 57, 59 (Ind. Ct. App. 2004); Rogers v. State, 814 N.E.2d 695, 701 (Ind. Ct. App. 2004); Fowler v. State, 809 N.E.2d 960, 963-64 (Ind. Ct. App. 2004).

The proposition that an excited utterance is per se nontestimonial has been accepted by some courts and rejected by others. The Colorado Court of Appeals agreed with this reasoning: "We also agree with the Fowler court's conclusion that classification of a statement as an excited utterance, while not dispositive, supports a conclusion that a statement is nontestimonial . . . . [W]e hold that where, as here, a victim makes an excited utterance to a police officer, in a noncustodial setting and without indicia of formality, the statement is nontestimonial under Crawford." People v. King, 2005 Colo. App. LEXIS 111, *14-16 (Colo. Ct. App. Jan. 27, 2005). However, the court noted, "there may nevertheless be unanticipated circumstances, similar in nature, that would warrant a different conclusion." Id. at *16. The California Court of Appeals took issue with this view. People v. Kilday, 20 Cal. Rptr. 3d 161, 173 n.9 (Cal. Ct. App. 2004), partially vacated by 105 P.3d 114 (Cal. 2005) ("to the extent that [Hammon, 809 N.E. at 952-53 and Fowler, 809 N.E.2d at 963-64] can be read to limit the application of Crawford to formal interrogations, we disagree"). The Florida Court of Appeals echoed this disagreement: "While this argument has some appeal at least on the surface, we do not think that excited utterance can be automatically excluded from the class of testimonial statements." Lopez, 888 So. 2d at 699. Accord Stancil v. United States, 866 A.2d 799, 809 (D.C. 2005) (adopting the reasoning in Lopez that looks to nature of excited utterance).

For the reasons given below, we agree with the Court of Appeals in its view that responses to initial inquiries at a crime scene are typically not "testimonial." We do not agree, however, that a statement that qualifies as an "excited utterance" is necessarily nontestimonial. The Court of Appeals is likely correct that the declarant of an excited utterance will ordinarily lack the requisite motive because the heat of the moment makes it unlikely that the declarant is focusing on preservation rather than communication of information. But an interrogating officer may be so motivated. Thus, the "structured questioning" identified by some courts as an indicium of a testimonial statement may be best understood as evidence of a purpose to elicit testimonial statements.

C. *Other Courts' Efforts to Define "Testimonial"*

As predicted by Chief Justice Rehnquist in his separate opinion in Crawford: "prosecutors need answers as to what beyond the specific kinds of 'testimony' the Court lists is covered by the new rule." 541 U.S. at 77 (Rehnquist, C.J., concurring in result). Of course, the same is true of judges. Crawford has had major implications for the criminal courts in every United States jurisdiction, and the predicted spate of appellate efforts to give guidance to trial courts on this point is underway.

Some courts have attempted to provide general guidelines to assist trial courts when deciding whether a statement is testimonial under Crawford. The Colorado Court of Appeals identified testimonial statements as generally those which are: "(1) solemn or formal statements (not casual or off-hand remarks); (2) made for the purpose of providing or establishing facts in judicial proceedings (not for business or personal purposes); (3) to a government actor or agent (not someone unassociated with government activity)." People v. Compan, 100 P.3d 533, 537 (Colo. Ct. App. 2004). By describing the second factor as the purpose for which the statement is "made," this formulation may be read to focus on the motivation of the declarant. See also People v. Caudillo, 122 Cal. App. 4th 1417, 1439 (Cal. Ct. App. 2004) (911 calls are not within the core class of testimonial statements); People v. Moscat, 777 N.Y.S.2d 875, 879 (N.Y. Crim. Ct. 2004) ("A 911 call for help is essentially different in nature than the 'testimonial' materials that Crawford tells us the Confrontation Clause was designed to exclude.").

The type of statement and its audience are undoubtedly important factors in determining whether the statement is testimonial.  A spontaneous exclamation by a victim to a friend, family member, or coworker is not likely to be regarded as testimonial.  See, e.g., People v. Griffin, 93 P.3d 344, 369 (Cal. 2004) (victim's statement to a friend at school that defendant had been fondling her for some time and she intended to confront him was not testimonial hearsay within the meaning of Crawford); People v. Garrison, 109 P.3d 1009, 1011 (Colo. Ct. App. 2004) (murder victim's statements to her manager that the defendant was harassing her and threatening to kill her were admissible); People v. Vigil, 104 P.3d 258, 265 (Colo. Ct. App. 2004) (child sexual abuse victim's statements to his father admissible against the defendant); Herrera-Vega v. State, 888 So. 2d 66, 69 (Fla. Dist. Ct. App. 2004) (child's statements to parents reporting a "touching" were not testimonial); Demons v. State, 595 S.E.2d 76, 79-80 (Ga. 2004) (victim's statement to coworker that the defendant had threatened to kill the victim is admissible).

Statements made to police officers or other agents of the State are more likely to be testimonial.  See, e.g., In re Rolandis G., 817 N.E.2d 183, 190 (Ill. Ct. App. 2004) (seven-year-old made the same statement to his mother, a police detective, and a child abuse investigator, but only the statement to his mother was nontestimonial); In re T.T., 815 N.E.2d 789, 801 (Ill. Ct. App. 2004).  This is true even if the police attempt to receive the statement in a "casual" and "friendly" atmosphere.  See, e.g., People ex rel R.A.S., 111 P.3d 487, 489 (Colo. Ct. App. 2004) (child's videotaped statements to police in a question and answer format were testimonial); Vigil, 104 P.3d at 262 (child's videotaped statements to police were testimonial even though given in a relaxed atmosphere, with open-ended, nonleading questions, and with no oath); People v. Mileski, 2004 Mich. App. LEXIS 3022, *7 (Mich. Ct. App. Nov. 4, 2004) (unpublished opinion) (because nurse Garland, in her capacity as a forensic nurse, acted as an arm of the police and prosecution in questioning the complainant, the statement at issue was testimonial).

Some decisions have focused on whether the questioning was "structured."  For example in State v. Barnes, 854 A.2d 208, 211 (Me. 2004), a year-and-a-half before she was murdered, a mother drove herself to the police station sobbing and reporting that her son had assaulted her and had threatened to kill her more than once during the day.  The court held that her statements were not testimonial because:  1) the police did not seek her out; 2) the statements were made

12

when the victim was still under the stress of the assault; and 3) she was not responding to tactically structured questioning. Id. at 211-12.

Other decisions have focused on the audience's purpose in eliciting the statement. See United States v. Mikos, 2004 U.S. Dist. LEXIS 13650, *17 (N.D. Ill. July 16, 2004) (Department of Health and Human Services agents interviewed a victim of a doctor under investigation. "HHS Agents interviewed Brannon as part of a formal healthcare fraud investigation. Their purpose was to gather information for potential use against Mikos at trial, thus, the Court finds that Brannon's statements to the HHS Agents fall within the realm of testimonial statements."); United States v. Saner, 313 F. Supp. 2d 896, 901-02 (S.D. Ind. 2004) (a target's ex parte statements to a prosecutor who visited the target's home were testimonial because the prosecutor was procuring these statements "with an eye toward trial"); State v. Vaught, 682 N.W.2d 284, 292 (Neb. 2004) (because the four-year-old victim clearly understood that a medical examination was being performed, and the purpose of the doctor's questions was to assist in medical diagnosis and treatment, the victim's statements were not testimonial).

In Kilday, police responded to a call from the victim's employer claiming possible domestic abuse. 123 Cal. App. 4th 406 (2004), partially vacated by 105 P.3d 114 (Cal. 2005). When the police arrived the victim was upset, frightened, and reluctant to speak to the police and offered only minimal information. An hour later, a female officer arrived and after being briefed on the scene, was able to elicit more information. Ultimately, the victim gave a tape-recorded statement to the police. The court held that only the first statement was nontestimonial because the officers "were not producing evidence in anticipation of a potential criminal prosecution in eliciting basic facts from Kiernan about the nature and cause of her injuries." Id. at 422. However, the court qualified its holding:

> In reaching this conclusion, we do not adopt a blanket rule that all statements obtained from victims or witnesses by police officers responding to emergency calls are necessarily nontestimonial. The determination whether a statement obtained through police questioning in the field is testimonial requires a case-specific, fact-based inquiry. Under Crawford, this inquiry must center around whether the officer involved was acting in an investigative capacity to produce evidence in anticipation of a potential criminal prosecution.

13

Id. Since the "responding officers were still principally in the process of accomplishing the preliminary tasks of securing and assessing the scene," the victim's initial responses were not testimonial. Id. The court also took the view that an interpretation of Crawford that makes the presence or absence of indicia of formality determinative is inconsistent with the Supreme Court's focus on the "production of testimonial evidence," which may occur during relatively informal questioning in the field. Id. at 421.

Finally, several courts have adopted essentially a "totality of the circumstances" approach, focusing on the "reasonable belief" of an "objective witness." People v. Lee, 124 Cal. App. 4th 483, 489 (Cal. Ct. App. 2004), review granted, 26 Cal. Rptr. 3d 302 (Cal. 2005) (some 911 calls may be made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial); People v. Cortes, 781 N.Y.S.2d 401, 406 (N.Y. Sup. Ct. 2004) (911 call reporting an ongoing crime and describing the perpetrator is testimonial); State v. Powers, 99 P.3d 1262, 1266 (Wash. Ct. App. 2004) (the trial court, on a case-by-case basis, can best assess the proposed admission of a 911 recording as testimonial or nontestimonial and whether the statement arises from interrogation).

E. *Testimonial Statements as Turning on the Motives of Both Questioner and Responder*

As observers predicted, we must look to the references in Crawford to "testimonial" statements to attempt to give clear guidance to trial courts as to what is and what is not prohibited by the Sixth Amendment. Justice Scalia, who authored the Crawford majority opinion, joined the concurring opinion of Justice Thomas in White v. Illinois, 502 U.S. 346, 358 (1992), arguing for a construction of "testimonial" statements limited to affidavits, depositions and the like. However, Crawford itself demonstrates that the term has a broader scope and applies at least to some interviews with victims or other witnesses. After considering the views of the Court of Appeals and the courts of other jurisdictions, we conclude that a "testimonial" statement is one given or taken in significant part for purposes of preserving it for potential future use in legal proceedings. In evaluating whether a statement is for purposes of future legal utility, the motive of the questioner, more than that of the declarant, is determinative, but if either is principally motivated by a desire to preserve the statement it is sufficient to render the statement "testimonial." If the statement is taken pursuant to established procedures, either the

14

subjective motivation of the individual taking the statement or the objectively evaluated purpose of the procedure is sufficient.

Support for this view is found in the majority's response to Chief Justice Rehnquist's contention that the fact "[t]hat a statement might be testimonial does nothing to undermine the wisdom of one of these [hearsay] exceptions." Crawford, 541 U.S. at 56 n.7. The majority contended that "[i]nvolvement of government officials in the production of testimony with an eye toward trial" was unequivocally dangerous. Id. These portions of Crawford's analysis make clear that government involvement is typical but not essential to a "testimonial" statement. Its development "with an eye toward trial" is in our view the critical component.

We think the "use in legal proceedings" test is consistent with other language in Crawford. The Court identified three formal testimonial situations: 1) testimony at a preliminary hearing; 2) testimony before a grand jury; and 3) testimony at a former trial; and two substantial equivalents: 4) statements made in "police interrogation;" and 5) statements made by a defendant incident to entering a guilty plea ("plea allocutions"). Id. at 68. The first three and the fifth certainly are statements made by the declarant and obtained by the receiver for use in a legal proceeding. Only the fourth of these is problematic. Any question by a police officer can be described as a "police interrogation," and the Court was careful in Crawford to note that it used the term "in its colloquial, rather than any technical legal, sense." Id. at 53 n.4. We understand "police interrogation" in this context certainly to include documented structured questioning recorded in written, audio, or video devices or any other means permitting the questions and statements to be preserved and presented to a court. That is what happened in Crawford itself. The frequently presented issue is whether a "police interrogation" is broader than a grilling and also extends to some or all of dealings such as the exchange between Amy and Mooney. To be sure, the very same conversation may evolve into testimonial statements. We think, however, that the other examples given by the Supreme Court indicate that a "police interrogation" is properly limited to attempts by police to pin down and preserve statements rather than efforts directed to determining whether an offense has occurred, protection of victims or others, or apprehension of a suspect. We think judged by the "use in legal proceedings" standard, responses to initial inquiries by officers arriving at a scene are typically not testimonial.

15

The Court also identified as one potential definition of testimonial statements those given under circumstances that would lead an "objective witness reasonably to believe that the statement would be available for use at a later trial." Id. at 52. This last clue is equally vexing. It is not clear whether we are to judge the expectations of an "objective witness" by the standard of a witness knowledgeable in the law and/or a witness with no particular awareness of the use a court might make of the statement. We assume the "witness" referred to is the person giving the statement, not an observer of the statement. The Crawford majority gives as an example of a "nontestimonial" statement a statement of the defendant's co-conspirator to a fellow inmate, citing Dutton v. Evans, 400 U.S. 74 (1970). Id. at 57. The declarant (the co-conspirator) presumably did not expect his statements to become a piece of evidence at the defendant's trial, but an objective observer knowledgeable in the law would anticipate that possibility. Accordingly, we take this definition to exclude statements that most people in the shoes of the declarant would consider as designed to convey information, even if a lawyer might recognize them as potentially admissible in court.

F. *Resolution of this Case*

Amy's statement to Mooney and the affidavit present different issues and neither falls clearly within the core testimonial statements identified in Crawford. For the reasons given above, we believe that whether a statement from a declarant to a police officer is testimonial will hinge upon the intent of the declarant in making the statement and the purpose for which the police officer elicited the statement. If the declarant is making a statement to the police with the intent that his or her statement will be used against the defendant at trial, then the statement is testimonial. Similarly, if the police officer elicits the statement in order to obtain evidence in anticipation of a potential criminal prosecution, then the statement is testimonial. We recognize some commentators have taken a broader view of Crawford's prohibition. See, e.g., Andrew Siegal, Court is Adjourned—What Have We Learned?, 16 S. Carolina Lawyer 14, 20 (Sept. 2004) (use of police officer's report of alleged domestic-violence victim's statement "almost certainly" unconstitutional under Crawford). Under our view of the standard for a testimonial statement, however, the motivations of the questioner and declarant are the central concerns. These present factual issues as to which the findings of the trial court should be upheld unless clearly erroneous. Because the admissibility of Amy's statements arose in the trial court before

16

<u>Crawford</u> was decided, there were no rulings other than a finding that Amy's statements were excited utterances. Despite the absence of findings, we think the undisputed facts are sufficient to determine that the initial exchange between Mooney and Amy fell into the category of preliminary investigation in which the officer was essentially attempting to determine whether anything requiring police action had occurred and, if so, what. Officer Mooney, responding to a reported emergency, was principally in the process of accomplishing the preliminary tasks of securing and assessing the scene. Amy's motivation was to convey basic facts and there is no suggestion that Amy wanted her initial responses to be preserved or otherwise used against her husband at trial. Accordingly, her oral statement was not testimonial.

The affidavit is another story. After Amy explained to Officer Mooney what had happened between her and the defendant, Mooney asked Amy to complete and sign the affidavit. Clearly, the purpose in securing the affidavit was to record and document Amy's account, and at least one principal reason to preserve Amy's story was to provide a basis for its use as evidence or impeachment in Hershel's potential criminal prosecution. We think that for these purposes it is irrelevant whether that was Mooney's subjective conscious purpose, or Mooney was simply following procedures designed by others to accomplish, among other things, the goal of preserving the statement for potential legal use. Therefore, the admission of the affidavit was in violation of Hershel's constitutional rights under the Confrontation Clause. <u>See</u> <u>People v. Shreck</u>, 107 P.3d 1048, 1060-61 (Colo. Ct. App. 2004) (affidavits provided solely to authenticate documentary evidence do not violate the Confrontation Clause, but authenticating affidavits that are used to prove the material facts of habitual criminal proceedings were in violation of the Confrontation Clause).

The Court of Appeals affirmed the trial court on the ground that "any error in admitting the battery affidavit was harmless because it was cumulative of Officer Mooney's testimony." <u>Hammon</u>, 809 N.E.2d at 948 n.1. "Error in the admission of evidence may be harmless when the evidence is merely cumulative of other properly admitted evidence. <u>Black's Law Dictionary</u> 596 (8th ed. 2004) defines cumulative evidence as 'additional evidence that supports a fact established by the existing evidence (especially that which does not need further support).'" <u>Witte v. Mundy</u>, 820 N.E.2d 128, 135 (Ind. 2005).

It is true that the affidavit merely repeated the substance of Amy's oral statements to Officer Mooney. However, we do not think that is the end of the inquiry. Crawford teaches that the admission of testimonial hearsay violates the Sixth Amendment to the Constitution of the United States. Under Chapman v. California, 386 U.S. 18 (1967), overruled on other grounds by Estelle v. McGuire, 502 U.S. 62 (1991), federal constitutional errors must be harmless beyond a reasonable doubt. See Neder v. United States, 527 U.S. 1, 15 (1999). As Crawford makes clear, our views on alternative means of assuring reliability or trustworthiness of an out-of-court statement are irrelevant for Sixth Amendment purposes. Other means of assuring reliability are not substitutable for confrontation and cross examination: "The Constitution prescribes a procedure for determining the reliability of testimony in criminal trials, and we, no less than the state courts, lack authority to replace it with one of our own devising." Crawford, 541 U.S. at 67.

Evaluation of potential harm from the affidavit is difficult to resolve on the sparse record. Some decisions have held testimonial statements such as Amy's affidavit to be admissible *because* they were testimonial (for example under oath) and therefore reliable. See, e.g., United States v. Gallego, 191 F. 3d 156, 168 (2d Cir. 1999) (plea allocution); United States v. Papajohn, 212 F.3d 1112, 1120 (8th Cir. 2000) (grand jury); Nowlin v. Commonwealth, 579 S.E.2d 367, 371-72 (Vir. Ct. App. 2003) (statement made to police while defendant was in custody on pending charges was deemed to be more clearly against penal interest and thus more reliable). Crawford plainly rejects this contention. Crawford, 541 U.S. at 65 (describing it as adding "insult to injury"). Crawford makes clear that reliability derived from formality or any other source does not justify doing away with the confrontation requirement. We nevertheless agree that there is some plausibility to the idea that a statement given in a more formal manner may be more well considered and perhaps is entitled to greater credibility. Accordingly, despite its failure to salvage the statements from a Confrontation Clause challenge, the formality of the affidavit may have lent credibility in a jury's mind. If this were a jury trial, under a reasonable doubt standard, perhaps the affidavit with its attendant formality would have significantly affected the ultimate conclusion of the trier of fact. Because the case was tried to the bench, however, we need not resolve the potential impact of the affidavit in a jury trial. We find the error harmless beyond a reasonable doubt in light of the surrounding contrary physical evidence and Amy's initial responses to Officer Mooney. See United States v. Clark, 559 F. 2d 420, 426

18

(5th Cir. 1977) (citing bench trial versus trial by jury as a factor in evaluating whether error is harmless beyond a reasonable doubt).

## Conclusion

The judgment of the trial court is affirmed.

Shepard, C.J., and Dickson, Sullivan, and Rucker, JJ. concur.