DECISION AND JOURNAL ENTRY
 INTRODUCTION {¶ 1} Lawrence H. Moorer came home drunk from a funeral with lipstick on his collar. When his girlfriend, Carolyn Washington, got angry and tried to leave, Mr. Moorer attacked her. Ms. Washington eventually escaped their apartment and went across the street to a neighbor's to call 911. The Grand Jury indicted Mr. Moorer for kidnapping and domestic violence, and a jury convicted him of domestic violence. Mr. Moorer has appealed, arguing that the trial court improperly admitted evidence in violation of his right to confrontation and improperly allowed a police officer to testify from a written record without establishing an insufficient recollection. He has also argued that his conviction is against the manifest weight of the evidence. This Court affirms because the admission of the 911 recording did not violate Mr. Moorer's right to confront, any incorrect evidentiary rulings by the trial court were harmless, and his conviction is not against the manifest weight of the evidence. *Page 2 
 FACTS {¶ 2} On the evening of March 4, 2008, the Akron Safety Communications Center received a 911 call from 1230 Roslyn Avenue. The woman calling identified herself as Carolyn Washington and said that her boyfriend, Lawrence Moorer, was choking and punching her and would not let her out of their apartment, which she said was at 1243 Roslyn Avenue. Two Akron police officers responded to the call, Patrick Neumann and Brian French. They met Ms. Washington outside of 1243 Roslyn Avenue. After they briefly spoke with her, Officer French went upstairs to speak with Mr. Moorer, while Officer Neumann remained outside with Ms. Washington. The officers determined that Mr. Moorer was the aggressor and arrested him for unlawful restraint. The Grand Jury later indicted him for kidnapping and domestic violence.
 {¶ 3} Ms. Washington did not testify at Mr. Moorer's trial. Instead, the State played a recording of her 911 call and asked the responding officers what she said to them. Mr. Moorer objected to the telephone recording and Officer Neumann's testimony, arguing that the admission of what Ms. Washington had said violated his right to confrontation. The trial court concluded that, because Ms. Washington's statements to the 911 dispatcher and her initial statements to Officer Neumann were not testimonial, admission of that evidence did not violate Mr. Moorer's confrontation rights. The jury convicted Mr. Moorer of domestic violence, and the trial court sentenced him to two years in prison. Mr. Moorer has appealed, assigning four errors.
 911 CALL {¶ 4} Mr. Moorer's second assignment of error is that the admission of the 911 recording violated his constitutional right to confrontation. He has argued that, because Ms. Washington was calling from a different address, there was no present emergency to resolve. He, therefore, has argued that the statements she made to the dispatcher were testimonial. *Page 3 
 {¶ 5} The Sixth Amendment of the United States Constitution provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." Noting that witnesses are those that "bear testimony," the United States Supreme Court concluded in Crawford v. Washington, 541 U.S. 36, 51, 54 (2004), that the Confrontation Clause prohibits out-of-court testimonial statements "unless [the witness] was unavailable to testify, and the defendant had had a prior opportunity for cross-examination."
 {¶ 6} In Davis v. Washington, 547 U.S. 813 (2006), the Supreme Court addressed what statements are testimonial. It held that "[statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." Id. at 822.
 {¶ 7} In Davis, the Supreme Court wrote that "the initial interrogation conducted in connection with a 911 call, is ordinarily not designed primarily to `establis[h] or prov[e]' some past fact, but to describe current circumstances requiring police assistance."Id. at 827. It noted that the caller in that case was describing events"as they were actually happening" rather than describing past events.Id. The Court also noted that "any reasonable listener would recognize that [the caller] . . . was facing an ongoing emergency." Id. It further wrote that the "call was plainly a call for help against bona fide physical threat." Id. According to the Court, "the nature of what was asked and answered[,] . . . viewed objectively, was such that the elicited statements were necessary to be able to resolve the present emergency, rather than simply to learn . . . what had happened in the past." Id. Finally, it wrote that the caller was not "responding calmly, at the *Page 4 
station house, to a series of questions, with the officer-interrogator taping and making notes of her answers." Id. Instead, her "frantic answers were provided over the phone, in an environment that was not tranquil, or even (as far as any reasonable 911 operator could make out) safe." Id. The Court concluded "that the circumstances of [the] interrogation objectively indicate[d that] its primary purpose was to enable police assistance to meet an ongoing emergency." Id. at 828. It, therefore, held that the caller's initial statements to the 911 operator were not testimonial. Id. at 829.
 {¶ 8} Regarding the 911 call in this case, the dispatcher first asked about the location of the emergency. Ms. Washington answered "1243 Roslyn." The dispatcher then asked what was the emergency, and Ms. Washington answered that her "boyfriend is violent right now." She said that Mr. Moorer was choking her and punching her in her pacemaker, that he would not let her out of the house, and that "he is fighting with the neighbor right now." When the dispatcher asked if he had done "all that to [her]," Ms. Washington responded with a distressed "yes." The dispatcher then asked Ms. Washington to identify herself and her boyfriend, as well as to describe what her boyfriend was wearing.
 {¶ 9} An objective review of the 911 recording indicates that the primary purpose of the conversation was to enable the police to meet an ongoing emergency. While Ms. Washington may have escaped to a neighbor's apartment, she said that Mr. Moorer was still violent and was currently fighting with her neighbor. As in Davis, her call "was plainly a call for help against bona fide physical threat." Id. at 827. Furthermore, "the nature of what was asked and answered . . . was such that [her] statements were necessary to be able to resolve the present emergency, rather than simply to [tell the dispatcher] . . . what had happened in the past." Id. This Court, therefore, concludes that Ms. Washington's statements to the dispatcher were not testimonial and *Page 5 
that the admission of the 911 recording did not violate Mr. Moorer's right to confront. Mr. Moorer's second assignment of error is overruled.
 OFFICERS' RESPONSE {¶ 10} Mr. Moorer's first assignment of error is that the trial court violated his right to confront by permitting the officers who responded to Ms. Washington's call to testify about what she had said to them. He has argued that her statements to the officers were testimonial underHammon v. Indiana, which was the companion case to Davis v.Washington. See Davis v. Washington, 547 U.S. 813, 819 (2006).
 {¶ 11} In Hammon, police responded to a domestic disturbance at the Hammons' home. Id. "They found [Mrs. Hammon] alone on the front porch, appearing `somewhat frightened.'" Id. (quoting Hammon v. Indiana,829 N.E.2d 444, 446 (Ind. 2005)). She told them, however, that "nothing was the matter." Id. (quoting Hammon, 829 N.E.2d at 447). When they entered the house, they encountered Mr. Hammon, who told them "that he and his wife had `been in an argument' but `everything was fine now' and the argument `never became physical.'" Id. By that point, Mrs. Hammon had come back inside so the officers took the couple into different rooms. The officer who was with Mrs. Hammon "again asked [her] what had occurred." Id. He also had her complete an affidavit regarding what had happened. Id. at 820.
 {¶ 12} The Supreme Court concluded that Mrs. Hammon's statements to the officers were testimonial. "It [was] entirely clear from the circumstances that [their] interrogation was part of an investigation into possibly criminal past conduct." Id. at 829. "There was no emergency in progress; the interrogating officer testified that he had heard no arguments or crashing and saw no one throw or break anything."Id. "When the officers first arrived, [Mrs. *Page 6 
Hammon] told them that things were fine and there was no immediate threat to her person." Id. at 829-30.
 {¶ 13} The statements Ms. Washington made to Officers Neumann and French when they met her outside of 1243 Roslyn were also testimonial. Officer Neumann testified that, when they arrived, Ms. Washington was standing outside of 1243 Roslyn and was fairly calm. There did not appear to be any immediate threat to her person, and it did not appear that Mr. Moorer was still fighting with the neighbor. Accordingly, there was no ongoing emergency. If statements "were neither a cry for help nor the provision of information enabling officers immediately to end a threatening situation, the fact that they were given at an alleged crime scene and were `initial inquiries' is immaterial." Id. at 832. Furthermore, according to Officer Neumann, when he spoke with Ms. Washington, he was "just trying to gather . . . the basic synopsis of what happened." The circumstances, therefore, indicate that the officers' questions were "part of an investigation into possibly criminal past conduct." Id. at 829.
 {¶ 14} Although Ms. Washington's statements were testimonial, Mr. Moorer has not demonstrated reversible error. Notably, while he objected to Officer Neumann's testimony about what Ms. Washington had said, he did not object to Officer French's testimony. In fact, Mr. Moorer specifically asked Officer French what he had written in his report regarding what Ms. Washington told him. Officer French replied that Ms. Washington had said she "was choked, pushed down, and was hit in the face." Mr. Moorer, therefore, has not only forfeited any error regarding Officer French's testimony, he invited that error. While Mr. Moorer objected to Officer Neumann's testimony that Ms. Washington told him that she had been "struck with [Mr. Moorer's] hands, kicked, choked, and thrown to the ground," his testimony was merely cumulative in light of her properly admitted statements to the 911 dispatcher and the testimony *Page 7 
of Officer French. This Court, therefore, concludes that any error associated with Officer Neumann's testimony about what Ms. Washington told him was harmless. See Crim. R. 52(A). Mr. Moorer's first assignment of error is overruled.
 RECORDED RECOLLECTION {¶ 15} Mr. Moorer's third assignment of error is that the trial court incorrectly allowed a deputy to testify from a written record without establishing an insufficient recollection. Rule 803(5) of the Ohio Rules of Evidence provides that a recorded recollection is not excluded by the hearsay rule if certain requirements are met. "In order to admit a statement as substantive evidence under Evid. R. 803(5), a party must establish through the testimony of the witness that (1) the witness does not have a present recollection of the events in question; (2) the recorded recollection was made at a time when the events were fresh in the witness's memory; (3) the recorded recollection was made or adopted by the witness; and (4) the recorded recollection correctly reflects the prior knowledge of the witness." State v. Rutkowski, 9th Dist. No. 94CA005831, 1995 WL 324085 at *4 (May 31, 1995).
 {¶ 16} The deputy testified that, after he interviewed Mr. Moorer during the booking process, he entered the information Mr. Moorer provided into a computer, which generated a report. Mr. Moorer is correct that the trial court incorrectly allowed the deputy to refer to a printout of the report before saying he could not remember what Mr. Moorer had said. The trial court's error, however, was harmless because the deputy's testimony was not prejudicial. The only information the deputy provided was that Mr. Moorer said that he and Ms. Washington lived at 1243 Roslyn Avenue and that Mr. Moorer's sister lived at 1226 Roslyn Avenue. The deputy also noted that Mr. Moorer had not listed anyone named Brenda as a friend or family member. *Page 8 
 {¶ 17} Regarding Mr. Moorer's failure to list a woman named Brenda, the State introduced recordings of telephone calls Mr. Moorer made to his sister from jail in which he referred to a woman named Brenda. The prosecutor suggested that it was strange that Mr. Moorer had not listed anyone named Brenda in the list of 25 friends and family members that he gave to the deputy. It was the prosecutor's theory that Mr. Moorer used the name Brenda as code for Ms. Washington. The deputy admitted, however, that Mr. Moorer was not asked to list every friend that he had and that, just because he did not list someone, did not mean that that person did not exist. Accordingly, Mr. Moorer has not established that he was prejudiced by the deputy's testimony. His third assignment of error is overruled.
 MANIFEST WEIGHT {¶ 18} Mr. Moorer's fourth assignment of error is that his conviction is against the manifest weight of the evidence. When a defendant argues that his convictions are against the manifest weight of the evidence, this Court "must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."State v. Otten, 33 Ohio App. 3d 339, 340 (1986).
 {¶ 19} The jury convicted Mr. Moorer of violating Section 2919.25(A) of the Ohio Revised Code. That section provides that "[n]o person shall knowingly cause or attempt to cause physical harm to a family or household member." Ms. Washington told the 911 dispatcher that Mr. Moorer had choked and punched her. She told Officer French that he choked, pushed, and hit her. Officer French observed that she had marks on the left side of her face that were "fresh," "swollen," and "definitely from an altercation." Although he later admitted that the marks *Page 9 
"could have been [from] anything," Officer Neumann also testified that he observed swelling and marks on Ms. Washington that were "consistent with being struck." Furthermore, although Officer French did not see any choke marks on Ms. Washington, he noted that, with someone of her type of complexion, "you don't always notice all the marks." Finally, while Ms. Washington did not testify against Mr. Moorer, Officer French testified that Mr. Moorer had told him that he would get her to recant. Considering all the evidence that was before the jury, this Court cannot say that it lost its way when it found that Mr. Moorer caused harm to a household member. His fourth assignment of error is overruled.
 CONCLUSION {¶ 20} The trial court properly concluded that Ms. Washington's statements to the 911 dispatcher were not testimonial. While her statements to Officers Neumann and French were testimonial, permitting Officer Neumann to testify about what she told him was harmless error. The trial court's decision to allow a deputy to refer to a computer printout of information Mr. Moorer gave him was also harmless error. In addition, Mr. Moorer's conviction is not against the manifest weight of the evidence. The judgment of the Summit County Common Pleas Court is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App. R. 27. *Page 10 
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App. R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App. R. 30.
Costs taxed to appellant.
MOORE, P. J. CONCURS.
CARR, J. CONCURS IN JUDGMENT ONLY. *Page 1