COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-08-137-CR

 

 

DENNIS WAYNE PRITCHARD                                                 APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

             FROM
THE 78TH DISTRICT COURT OF WICHITA COUNTY

 

                                              ------------

 

                                MEMORANDUM
OPINION[1]

 

                                              ------------

I. Introduction

Appellant Dennis Wayne Pritchard appeals his convictions
for aggravated robbery and robbery.  In
three points, Pritchard argues that the trial court erred by admitting certain
statements at trial in violation of the Confrontation Clause of the Sixth
Amendment.  We will affirm.








II. Background

Pam Marten and her husband Harry Marten
were at home one night when a man rang their doorbell.  When Mrs. Marten answered the door, the man
told her that his name was Dennis and asked to see Mr. Marten.  He said to tell Mr. Marten that Kerri had
sent him.  Mr. Marten, who was eighty-one
years of age and partially paralyzed, was in the bedroom.  Mrs. Marten took the man to the bedroom, and
the man told the Martens that he wanted to be compensated because Mr. Marten
had been Ausing@ his wife
Kerri.  Mrs. Marten went to another room
to call the police; the man followed her, threatened her with a toy gun, and
repeatedly hit her in the face and head with his fist.  In the meantime, Mr. Marten called 911 from
the bedroom.  The man returned to the
bedroom, and Mrs. Marten ran to her neighbor=s house.  Her neighbor also called 911.  Mrs. Marten later told the police that the
man took her purse and her husband=s wallet.  








Mr. Marten told a detective with the police department that
he knew a woman named Kerri who worked at a car wash and that he gave her money
occasionally.  The detective located
Kerri Ysasi, who said that the person the detective described as the suspect reminded
her of someone known as AGunner.@  The detective determined that the man known
as Gunner was Pritchard and compiled a photo lineup with Pritchard and five
other individuals.  Mrs. Marten
identified Pritchard as the man who robbed her and her husband; Mr. Marten was
unable to identify the robber.   

The State tried Pritchard on one count of aggravated
robbery (of Mr. Marten) and one count of robbery (of Mrs. Marten).  Prior to Pritchard=s trial, Mr.
Marten died of causes unrelated to the alleged aggravated robbery.  The jury found Pritchard guilty of both
counts, and the trial court sentenced him to confinement for forty-five years
on each count, to run concurrently.  This
appeal followed.

III. Victim=s Out-of-Court
Statement

In his first and third points, Pritchard contends that the
trial court erred by admitting at both the guilt-innocence and the punishment
phases of trial Mr. Marten=s out-of-court
statements made to police.  See U.S.
Const. amend. VI.  Specifically,
Pritchard contends that these statements were testimonial in nature and that,
consequently, the admission of such statements violated the Confrontation
Clause of the Sixth Amendment. 








Officer Betty King, an officer who responded to Mr. Marten=s 911 call,
testified for the State at trial.[2]  She explained that she arrived at the Marten
residence within three or four minutes after she received the dispatch and
found Mr. Marten bleeding from his forehead and eyebrow, very disoriented, and
calling out for his wife.  Officer King
testified that Mr. Marten Awas
horrified.  He was very concerned for the
safety of his wife.@ 
After making a protective sweep of the house and finding no one else in
the home, she asked him what had happened and said she needed some information
in order to look for his wife.  Officer
King said that it was Ahard to keep him on track because of his
fear for the safety of his wife.@  Mr. Marten explained what had happened, including
that the man took his wallet from his pocket and struck him twice in the head
with an object.  He also described the
man to the officer.  








We review a constitutional legal ruling, such as whether a
statement is testimonial or nontestimonial, de novo.  Lilly v. Virginia, 527 U.S. 116, 137,
119 S. Ct. 1887, 1900 (1999); Vinson v. State, 252 S.W.3d 336, 339 (Tex.
Crim. App. 2008); Wall v. State, 184 S.W.3d 730, 742 (Tex. Crim. App.
2006).  The Confrontation Clause of the
Sixth Amendment provides: AIn all criminal
prosecutions, the accused shall enjoy the right . . . to be confronted with the
witnesses against him.@ 
U.S. Const. amend. VI.  The
Confrontation Clause bars the Aadmission of
testimonial statements of a witness who did not appear at trial unless he was
unavailable to testify and the defendant had had a prior opportunity for
cross-examination.@  Crawford
v. Washington, 541 U.S. 36, 53B54, 124 S. Ct.
1354, 1365 (2004).  In Davis v.
Washington, the Supreme Court established the following:

     Statements are
nontestimonial when made in the course of police interrogation under
circumstances objectively indicating that the primary purpose of the
interrogation is to enable police assistance to meet an ongoing emergency.  They are testimonial when the circumstances
objectively indicate that there is no such ongoing emergency, and that the
primary purpose of the interrogation is to establish or prove past events
potentially relevant to later criminal prosecution.

547
U.S. 813, 822, 126 S. Ct. 2266, 2273B74 (2006).

     In the instant case, in determining
whether Mr. Marten=s statements to Officer King were
testimonial, the issue is whether circumstances were present that would
indicate the existence of an ongoing emergency at the time he made the
statements.  See Vinson, 252
S.W.3d at 339.  We look to the
nonexclusive factors of (1) whether the situation was still in progress; (2)
whether the questions sought to determine what is presently happening as
opposed to what has happened in the past; (3) whether the primary purpose of
the interrogation was to render aid rather than to memorialize a possible
crime; (4) whether the questioning was conducted in a separate room, away from
the alleged attacker; and (5) whether the events were deliberately recounted in
a step-by-step fashion.  See id. (citing
Davis, 547 U.S. at 822, 126 S. Ct. at 2274B75). 








A review of these factors establishes that the
circumstances surrounding Mr. Marten=s statements
objectively indicate the primary purpose of the questioning was to enable
police to meet an ongoing emergencyClocating Mrs.
Marten and the suspect.  See Davis,
547 U.S. at 822, 126 S. Ct. at 2273B74.  First, the situation was still in progress
when Mr. Marten made the complained-of statements; Officer King testified that
during her questioning, Mr. Marten and the officers at the house did not know
the location of Mrs. Marten or the suspect. 
Although the complained-of statements included a description of events
that had already occurred, Mr. Marten was worried for his wife=s safety.  See Womack v. State, No. 05‑07‑00142‑CR,
2008 WL 3917807, at *3 (Tex. App.CDallas Aug. 27,
2008, no pet.) (not designated for publication).  








Second, the questioning sought to determine what was
presently occurring; Officer King explained that she was concerned with whether
the suspect was armed and that she Awanted to obtain
or try to obtain the description of a suspect so that we could put that
information out for other officers to search the area and just basically obtain
information as to what had taken place.@  See Garcia v. State, 212 S.W.3d 877,
884 (Tex. App.CAustin 2006, no pet.) (holding that
description of violent acts by suspect during ongoing kidnapping Aenabled law
enforcement >to know whom they are dealing with in
order to assess the situation, the threat to their own safety, and possible
danger to the potential victim=@).[3]  

Third, the primary purpose of the questioning was to render
aid.  Although Officer King agreed on
cross-examination that she was asking Mr. Marten questions to gather
information to prepare her report, she also testified that she wanted the information
to give the other officers details of the suspect and to locate Mrs.
Marten.  See Dixon v. State, 244
S.W.3d 472, 485 (Tex. App.CHouston [14th
Dist.] 2007, pet. ref=d) (holding that primary purpose of
questions was to determine if individual was physically injured and to assess
the potential for a continuing threat to complainant=s safety or the
safety of the responding officer).  As
the State correctly points out, Officer King=s testimony does
not suggest that the primary purpose of her questioning was to memorialize a
possible crime, but rather to gather information Ato enable police
assistance to meet an ongoing emergency.@  Garcia, 212 S.W.3d at 884 (citing Davis,
547 U.S. at 822, 126 S. Ct. at 2273B74).  








The fourth factor concerns whether the questions were
answered in an environment that was tranquil and safe.  See Davis, 547 U.S. at 827, 126 S. Ct.
at 2277; Womack, 2008 WL 3917807, at *3. 
Here, the suspect was no longer in the house when Mr. Marten spoke to
Officer King, but Mrs. Marten=s safety had not
been confirmed.  Finally,  nothing in the record suggests that the
events were recounted in a step-by-step manner. 
Officer King testified that Mr. Marten remained horrified, disoriented,
and concerned for his wife throughout the brief questioning and that it was
hard to keep him on track.  Accordingly,
we hold that the statements were nontestimonial in nature and that their admission
did not violate the Confrontation Clause. 









Even assuming that Mr. Marten=s statements were
testimonial in nature, any error in the admission of those statements was
harmless.  Because any such error is
constitutional, we apply rule of appellate procedure 44.2(a), under which we
must reverse unless we determine beyond a reasonable doubt that the error did
not contribute to appellant=s conviction or
punishment.  Tex. R. App. P.
44.2(a).  In applying a rule 44.2(a) harm
analysis to hearsay erroneously admitted over the defendant=s Confrontation
Clause objection, the court of criminal appeals has instructed us that if the
verdict or punishment would have been the same absent the error, then the error
is harmless.  Clay v. State, 240
S.W.3d 895, 904 (Tex. Crim. App. 2007) (reversing appellate court=s conclusion that
hearsay erroneously admitted over Confrontation Clause objection was not
harmless under rule 44.2(a) standard). 
In our assessment of the likelihood that, absent the trial court=s error, the jury=s verdict as to
appellant=s conviction and punishment would have
been the same, we must consider the entire record.  Id. 
Among the factorsCas revealed by the recordC that we must
consider are: (1) the importance of the hearsay evidence to the State=s case; (2)
whether the hearsay evidence was cumulative of other evidence; (3) the presence
or absence of other evidence corroborating or contradicting the hearsay
evidence on material points; and (4) the overall strength of the State=s case.  Id.; Scott v. State, 227 S.W.3d
670, 690 (Tex. Crim. App. 2007).  We must
also consider any other factor, as revealed by the record, that may shed light
on the probable impact of the trial court=s error on the
minds of average jurors.  Clay,
240 S.W.3d at 904.








Here, the complained-of statements proved two elements of
the charged offenseCthat Pritchard committed theft and that he
caused bodily injury to Mr. Marten, but other evidence presented to the jury
also established these elements.  At
trial, Mrs. Marten testified that she saw the man return to the bedroom before
she ran out of the house and that, although she did not witness the man hitting
her husband, she heard Aa shuffling kind of noise@ in the
bedroom.  She also testified that when
she returned from the hospital that night, Mr. Marten Ahad a big abrasion
to [the] side of his head@ and a scraped face.  The jury saw a photograph of Mr. Marten=s injuries.  Nothing in the record suggests that these injuries
were not caused by Pritchard.  Cf.
Mason v. State, 225 S.W.3d 902, 913 (Tex. App.CDallas 2007, pet.
ref=d) (noting that
complainant=s injuries were consistent with appellant=s statement that
he accidentally hit complainant when he reached over to get the
telephone).  Mrs. Marten testified that
neither she nor her husband had any visible external injuries prior to the
incident.  Additionally, Officer King
testified that Mr. Marten=s forehead and eyebrow were bleeding when
she arrived on the scene and that she saw blood on the bedspread and carpet in
the master bedroom.   Regarding the theft
element, in addition to Mr. Marten=s statements, Mrs.
Marten testified that Pritchard Atook my purse and
he took Harry=s wallet.@[4]








In light of this evidence, the complained-of statements
made by Mr. Marten were cumulative of and corroborated by evidence properly
before the jury.  See Clay, 240
S.W.3d at 904; Scott, 227 S.W.3d at 690. 
Reviewing the entire record in a neutral manner and applying the factors
as instructed by the court of criminal appeals in Clay, we hold beyond a
reasonable doubt that any error in admitting Officer King=s testimony
regarding Mr. Marten=s statements did not contribute to Pritchard=s conviction or
punishment.  See Tex. R. App.  P. 44.2(a); Clay, 240 S.W.3d at
904.  We overrule Pritchard=s first and third
points.

IV. Cross-Examination
of State=s Witness

In his second point, Pritchard argues that the trial court
erred by refusing to allow defense counsel to cross-examine Kerri Ysasi
regarding a pending criminal charge against her.  The State counters that Pritchard failed to
properly develop the record by perfecting a bill of exception and failed to
advise the court that his cross-examination concerning pending charges was for
the limited purpose of showing bias, prejudice, interest, or motive.  We agree.








The constitutional right to confront witnesses, guaranteed
by the Sixth Amendment to the United States Constitution, is violated when
appropriate cross-examination is limited. 
See Carroll v. State, 916 S.W.2d 494, 497 (Tex. Crim. App. 1996).  Nevertheless, there are several areas where
cross examination may be inappropriate and, in those situations, the trial
court has the discretion to limit cross-examination.  Id. at 498 (citing Delaware v. Van
Arsdall, 475 U.S. 673, 682, 106 S. Ct. 1431, 1436B37 (1986)).  Exposing a witness=s motivation to
testify for or against the accused or the State is a proper and important
purpose of cross-examination, and parties are allowed great latitude to show Aany fact which
would or might tend to establish ill feeling, bias, motive and animus on the
part of the witness.@ 
Carpenter v. State, 979 S.W.2d 633, 634B35 (Tex. Crim.
App. 1998). 

Evidence of Aunadjudicated
crimes could be admissible to show a witness=s bias or interest
in the particular case.@  Moreno
v. State, 22 S.W.3d 482, 486 (Tex. Crim. App. 1999).  Specifically, evidence that the witness is
subject to a criminal charge can be used to show bias or interest.  Id. 
But the proponent of a vein of cross examination must show the relevancy
of the questions.  Carpenter, 979
S.W.2d at 635.  For the evidence to be
admissible, the proponent must establish some causal connection or logical
relationship between the pending charges and the witness=s Avulnerable
relationship@ or potential bias or prejudice for the
State, or testimony at trial.  Id.
at 634.  A trial court may, within its
discretion, properly limit the scope of cross-examination to avoid harassment,
prejudice, confusion of the issues, endangering the witness, and the injection
of cumulative or collateral evidence.  Lagrone
v. State, 942 S.W.2d 602, 613 (Tex. Crim. App.), cert. denied, 522 U.S.
917 (1997).  The trial court=s determination
may not be reversed unless the appellant shows a clear abuse of
discretion.  Montgomery v. State,
810 S.W.2d 372, 392 (Tex. Crim. App. 1990) (op. on reh=g).








Here, during defense counsel=s
cross-examination of Ysasi, the following exchange took place:

[Defense Counsel:] Ms. Ysasi, do you currently have theft charges
pending against you here in Wichita County?

 

[Ysasi:]        I -- 

 

[The
State:]  Objection, Your Honor.  It=s improper impeachment.

 

The
Court:             Sustained.

 

[Defense Counsel:]  All right. 
Ms. Ysasi, back in 2001, you said you met Harry Marten the one time at
the car wash? 

 








Although
evidence of a pending charge against Ysasi may be admissible to show improper
motive or bias, Pritchard, as the proponent of the evidence, did not argue that
evidence of the pending charge should be admissible for that purpose or
otherwise establish a causal connection or logical relationship between the
pending charges and Ysasi=s Avulnerable
relationship@ or potential bias or prejudice for the
State.  See Carpenter, 979 S.W.2d
at 634; see also Moreno v. State 587 S.W.2d 405, 410B11 (Tex. Crim.
App. 1979) (holding that no error was shown when appellants did not Aurge[] the trial
court to allow them to introduce the indictment [against the State=s witness] to show
bias, prejudice, interest, etc., as now urged on appeal@); Robinson v.
State, 681 S.W.2d 288, 289 (Tex. App.CSan Antonio 1984,
pet. ref=d) (holding that
no error was shown when appellant failed to perfect a bill of exceptions and
failed to advise court that his cross-examination concerning prior arrests of
witness was for the purpose of showing bias, prejudice, interest, or motive).
Under controlling case law, Pritchard=s Anaked assertions@ of bias on appeal
are not sufficient to meet his burden.  See
Carpenter, 979 S.W.2d at 634 n.4 (ANaked allegations
which do no more than establish the fact that unrelated . . . charges are
pending do not, in and of themselves, show a potential for bias.@).  Consequently, we hold that the trial court
did not abuse its discretion by not allowing defense counsel to cross‑examine
Ysasi about a pending charge against her. 
We overrule Pritchard=s second point.

V. Conclusion

Having overruled Pritchard=s three points, we
affirm the trial court=s judgment.

 

SUE WALKER

JUSTICE

 

PANEL: CAYCE, C.J.; GARDNER and
WALKER, JJ.

 

DO
NOT PUBLISH

Tex.
R. App. P. 47.2(b)

 

DELIVERED: January 15, 2009

 











[1]See Tex.
R. App. P. 47.4.





[2]Officer King=s testimony was also admitted in
the punishment phase when, pursuant to the State=s request, the court stated, ASubject to the objections and the
Court=s rulings, the evidence [admitted
at the guilt/innocence phase] will be deemed admitted.@ 






[3]Pritchard argues on appeal, AAlthough the description of the
suspect could arguably be nontestimonial since it was necessary to provide a
description so police could be on the look-out for the man who had committed
the crime, the remainder of his statements were not.@ 
But, Mr. Marten=s statements regarding what had
happened helped police meet an ongoing emergency, namely, a robbery and
possibly a kidnapping by a suspect who was possibly dangerous.  See id.





[4]We note that Mrs. Marten=s testimony that Pritchard took her
purse is sufficient to satisfy the theft element regarding both counts.  See Ex Parte Hawkins, 6 S.W.3d 554,
560B61 (Tex. Crim. App. 1999)
(permitting multiple prosecutions for robbery when multiple assaults are
committed in the course of only one theft).