

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 2-08-137-CR

DENNIS WAYNE PRITCHARD                                         APPELLANT

V.

THE STATE OF TEXAS                                                  STATE

------------

### FROM THE 78TH DISTRICT COURT OF WICHITA COUNTY

------------

## MEMORANDUM OPINION[1]

------------

### I. INTRODUCTION

Appellant Dennis Wayne Pritchard appeals his convictions for aggravated robbery and robbery.  In three points, Pritchard argues that the trial court erred by admitting certain statements at trial in violation of the Confrontation Clause of the Sixth Amendment.  We will affirm.

---

[1] *See* Tex. R. App. P. 47.4.

## II. BACKGROUND

Pam Marten and her husband Harry Marten were at home one night when a man rang their doorbell. When Mrs. Marten answered the door, the man told her that his name was Dennis and asked to see Mr. Marten. He said to tell Mr. Marten that Kerri had sent him. Mr. Marten, who was eighty-one years of age and partially paralyzed, was in the bedroom. Mrs. Marten took the man to the bedroom, and the man told the Martens that he wanted to be compensated because Mr. Marten had been "using" his wife Kerri. Mrs. Marten went to another room to call the police; the man followed her, threatened her with a toy gun, and repeatedly hit her in the face and head with his fist. In the meantime, Mr. Marten called 911 from the bedroom. The man returned to the bedroom, and Mrs. Marten ran to her neighbor's house. Her neighbor also called 911. Mrs. Marten later told the police that the man took her purse and her husband's wallet.

Mr. Marten told a detective with the police department that he knew a woman named Kerri who worked at a car wash and that he gave her money occasionally. The detective located Kerri Ysasi, who said that the person the detective described as the suspect reminded her of someone known as "Gunner." The detective determined that the man known as Gunner was Pritchard and compiled a photo lineup with Pritchard and five other individuals.

2

Mrs. Marten identified Pritchard as the man who robbed her and her husband; Mr. Marten was unable to identify the robber.

The State tried Pritchard on one count of aggravated robbery (of Mr. Marten) and one count of robbery (of Mrs. Marten). Prior to Pritchard's trial, Mr. Marten died of causes unrelated to the alleged aggravated robbery. The jury found Pritchard guilty of both counts, and the trial court sentenced him to confinement for forty-five years on each count, to run concurrently. This appeal followed.

### III. VICTIM'S OUT-OF-COURT STATEMENT

In his first and third points, Pritchard contends that the trial court erred by admitting at both the guilt-innocence and the punishment phases of trial Mr. Marten's out-of-court statements made to police. *See* U.S. Const. amend. VI. Specifically, Pritchard contends that these statements were testimonial in nature and that, consequently, the admission of such statements violated the Confrontation Clause of the Sixth Amendment.

Officer Betty King, an officer who responded to Mr. Marten's 911 call, testified for the State at trial.[2] She explained that she arrived at the Marten

---

[2] Officer King's testimony was also admitted in the punishment phase when, pursuant to the State's request, the court stated, "Subject to the objections and the Court's rulings, the evidence [admitted at the guilt/innocence phase] will be deemed admitted."

3

residence within three or four minutes after she received the dispatch and found Mr. Marten bleeding from his forehead and eyebrow, very disoriented, and calling out for his wife. Officer King testified that Mr. Marten "was horrified. He was very concerned for the safety of his wife." After making a protective sweep of the house and finding no one else in the home, she asked him what had happened and said she needed some information in order to look for his wife. Officer King said that it was "hard to keep him on track because of his fear for the safety of his wife." Mr. Marten explained what had happened, including that the man took his wallet from his pocket and struck him twice in the head with an object. He also described the man to the officer.

We review a constitutional legal ruling, such as whether a statement is testimonial or nontestimonial, de novo. *Lilly v. Virginia*, 527 U.S. 116, 137, 119 S. Ct. 1887, 1900 (1999); *Vinson v. State*, 252 S.W.3d 336, 339 (Tex. Crim. App. 2008); *Wall v. State,* 184 S.W.3d 730, 742 (Tex. Crim. App. 2006). The Confrontation Clause of the Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. The Confrontation Clause bars the "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify and the defendant had had a prior opportunity for cross-examination." *Crawford v. Washington*, 541 U.S.

4

36, 53–54, 124 S. Ct. 1354, 1365 (2004). In *Davis v. Washington*, the Supreme Court established the following:

> Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.

547 U.S. 813, 822, 126 S. Ct. 2266, 2273–74 (2006).

In the instant case, in determining whether Mr. Marten's statements to Officer King were testimonial, the issue is whether circumstances were present that would indicate the existence of an ongoing emergency at the time he made the statements. *See Vinson*, 252 S.W.3d at 339. We look to the nonexclusive factors of (1) whether the situation was still in progress; (2) whether the questions sought to determine what is presently happening as opposed to what has happened in the past; (3) whether the primary purpose of the interrogation was to render aid rather than to memorialize a possible crime; (4) whether the questioning was conducted in a separate room, away from the alleged attacker; and (5) whether the events were deliberately recounted in a step-by-step fashion. *See id.* (citing *Davis*, 547 U.S. at 822, 126 S. Ct. at 2274–75).

A review of these factors establishes that the circumstances surrounding Mr. Marten's statements objectively indicate the primary purpose of the questioning was to enable police to meet an ongoing emergency—locating Mrs. Marten and the suspect. *See Davis*, 547 U.S. at 822, 126 S. Ct. at 2273–74. First, the situation was still in progress when Mr. Marten made the complained-of statements; Officer King testified that during her questioning, Mr. Marten and the officers at the house did not know the location of Mrs. Marten or the suspect. Although the complained-of statements included a description of events that had already occurred, Mr. Marten was worried for his wife's safety. *See Womack v. State*, No. 05-07-00142-CR, 2008 WL 3917807, at *3 (Tex. App.—Dallas Aug. 27, 2008, no pet.) (not designated for publication).

Second, the questioning sought to determine what was presently occurring; Officer King explained that she was concerned with whether the suspect was armed and that she "wanted to obtain or try to obtain the description of a suspect so that we could put that information out for other officers to search the area and just basically obtain information as to what had taken place." *See Garcia v. State*, 212 S.W.3d 877, 884 (Tex. App.—Austin 2006, no pet.) (holding that description of violent acts by suspect during ongoing kidnapping "enabled law enforcement 'to know whom they are dealing

6

with in order to assess the situation, the threat to their own safety, and possible danger to the potential victim'").[3]

Third, the primary purpose of the questioning was to render aid. Although Officer King agreed on cross-examination that she was asking Mr. Marten questions to gather information to prepare her report, she also testified that she wanted the information to give the other officers details of the suspect and to locate Mrs. Marten. *See Dixon v. State*, 244 S.W.3d 472, 485 (Tex. App.—Houston [14th Dist.] 2007, pet. ref'd) (holding that primary purpose of questions was to determine if individual was physically injured and to assess the potential for a continuing threat to complainant's safety or the safety of the responding officer). As the State correctly points out, Officer King's testimony does not suggest that the primary purpose of her questioning was to memorialize a possible crime, but rather to gather information "to enable police assistance to meet an ongoing emergency." *Garcia*, 212 S.W.3d at 884 (citing *Davis*, 547 U.S. at 822, 126 S. Ct. at 2273–74).

---

[3] Pritchard argues on appeal, "Although the description of the suspect could arguably be nontestimonial since it was necessary to provide a description so police could be on the look-out for the man who had committed the crime, the remainder of his statements were not." But, Mr. Marten's statements regarding what had happened helped police meet an ongoing emergency, namely, a robbery and possibly a kidnapping by a suspect who was possibly dangerous. *See id.*

The fourth factor concerns whether the questions were answered in an environment that was tranquil and safe. *See Davis*, 547 U.S. at 827, 126 S. Ct. at 2277; *Womack*, 2008 WL 3917807, at *3. Here, the suspect was no longer in the house when Mr. Marten spoke to Officer King, but Mrs. Marten's safety had not been confirmed. Finally, nothing in the record suggests that the events were recounted in a step-by-step manner. Officer King testified that Mr. Marten remained horrified, disoriented, and concerned for his wife throughout the brief questioning and that it was hard to keep him on track. Accordingly, we hold that the statements were nontestimonial in nature and that their admission did not violate the Confrontation Clause.

Even assuming that Mr. Marten's statements were testimonial in nature, any error in the admission of those statements was harmless. Because any such error is constitutional, we apply rule of appellate procedure 44.2(a), under which we must reverse unless we determine beyond a reasonable doubt that the error did not contribute to appellant's conviction or punishment. Tex. R. App. P. 44.2(a). In applying a rule 44.2(a) harm analysis to hearsay erroneously admitted over the defendant's Confrontation Clause objection, the court of criminal appeals has instructed us that if the verdict or punishment would have been the same absent the error, then the error is harmless. *Clay v. State*, 240 S.W.3d 895, 904 (Tex. Crim. App. 2007) (reversing appellate

court's conclusion that hearsay erroneously admitted over Confrontation Clause objection was not harmless under rule 44.2(a) standard). In our assessment of the likelihood that, absent the trial court's error, the jury's verdict as to appellant's conviction and punishment would have been the same, we must consider the entire record. *Id.* Among the factors—as revealed by the record—that we must consider are: (1) the importance of the hearsay evidence to the State's case; (2) whether the hearsay evidence was cumulative of other evidence; (3) the presence or absence of other evidence corroborating or contradicting the hearsay evidence on material points; and (4) the overall strength of the State's case. *Id.*; *Scott v. State*, 227 S.W.3d 670, 690 (Tex. Crim. App. 2007). We must also consider any other factor, as revealed by the record, that may shed light on the probable impact of the trial court's error on the minds of average jurors. *Clay*, 240 S.W.3d at 904.

Here, the complained-of statements proved two elements of the charged offense—that Pritchard committed theft and that he caused bodily injury to Mr. Marten, but other evidence presented to the jury also established these elements. At trial, Mrs. Marten testified that she saw the man return to the bedroom before she ran out of the house and that, although she did not witness the man hitting her husband, she heard "a shuffling kind of noise" in the bedroom. She also testified that when she returned from the hospital that

9

night, Mr. Marten "had a big abrasion to [the] side of his head" and a scraped face. The jury saw a photograph of Mr. Marten's injuries. Nothing in the record suggests that these injuries were not caused by Pritchard. *Cf. Mason v. State*, 225 S.W.3d 902, 913 (Tex. App.—Dallas 2007, pet. ref'd) (noting that complainant's injuries were consistent with appellant's statement that he accidentally hit complainant when he reached over to get the telephone). Mrs. Marten testified that neither she nor her husband had any visible external injuries prior to the incident. Additionally, Officer King testified that Mr. Marten's forehead and eyebrow were bleeding when she arrived on the scene and that she saw blood on the bedspread and carpet in the master bedroom. Regarding the theft element, in addition to Mr. Marten's statements, Mrs. Marten testified that Pritchard "took my purse and he took Harry's wallet."[4]

In light of this evidence, the complained-of statements made by Mr. Marten were cumulative of and corroborated by evidence properly before the jury. *See Clay*, 240 S.W.3d at 904; *Scott*, 227 S.W.3d at 690. Reviewing the entire record in a neutral manner and applying the factors as instructed by the

---

[4] We note that Mrs. Marten's testimony that Pritchard took her purse is sufficient to satisfy the theft element regarding both counts. *See Ex Parte Hawkins*, 6 S.W.3d 554, 560–61 (Tex. Crim. App. 1999) (permitting multiple prosecutions for robbery when multiple assaults are committed in the course of only one theft).

10

court of criminal appeals in *Clay*, we hold beyond a reasonable doubt that any error in admitting Officer King's testimony regarding Mr. Marten's statements did not contribute to Pritchard's conviction or punishment. *See* Tex. R. App. P. 44.2(a); *Clay*, 240 S.W.3d at 904. We overrule Pritchard's first and third points.

## IV. CROSS-EXAMINATION OF STATE'S WITNESS

In his second point, Pritchard argues that the trial court erred by refusing to allow defense counsel to cross-examine Kerri Ysasi regarding a pending criminal charge against her. The State counters that Pritchard failed to properly develop the record by perfecting a bill of exception and failed to advise the court that his cross-examination concerning pending charges was for the limited purpose of showing bias, prejudice, interest, or motive. We agree.

The constitutional right to confront witnesses, guaranteed by the Sixth Amendment to the United States Constitution, is violated when appropriate cross-examination is limited. *See Carroll v. State*, 916 S.W.2d 494, 497 (Tex. Crim. App. 1996). Nevertheless, there are several areas where cross examination may be inappropriate and, in those situations, the trial court has the discretion to limit cross-examination. *Id.* at 498 (citing *Delaware v. Van Arsdall*, 475 U.S. 673, 682, 106 S. Ct. 1431, 1436–37 (1986)). Exposing a witness's motivation to testify for or against the accused or the State is a

11

proper and important purpose of cross-examination, and parties are allowed great latitude to show "any fact which would or might tend to establish ill feeling, bias, motive and animus on the part of the witness." *Carpenter v. State*, 979 S.W.2d 633, 634–35 (Tex. Crim. App. 1998).

Evidence of "unadjudicated crimes could be admissible to show a witness's bias or interest in the particular case." *Moreno v. State*, 22 S.W.3d 482, 486 (Tex. Crim. App. 1999). Specifically, evidence that the witness is subject to a criminal charge can be used to show bias or interest. *Id.* But the proponent of a vein of cross examination must show the relevancy of the questions. *Carpenter*, 979 S.W.2d at 635. For the evidence to be admissible, the proponent must establish some causal connection or logical relationship between the pending charges and the witness's "vulnerable relationship" or potential bias or prejudice for the State, or testimony at trial. *Id*. at 634. A trial court may, within its discretion, properly limit the scope of cross-examination to avoid harassment, prejudice, confusion of the issues, endangering the witness, and the injection of cumulative or collateral evidence. *Lagrone v. State*, 942 S.W.2d 602, 613 (Tex. Crim. App.), *cert. denied*, 522 U.S. 917 (1997). The trial court's determination may not be reversed unless the appellant shows a clear abuse of discretion. *Montgomery v. State*, 810 S.W.2d 372, 392 (Tex. Crim. App. 1990) (op. on reh'g).

12

Here, during defense counsel's cross-examination of Ysasi, the following exchange took place:

[Defense Counsel:]    Ms. Ysasi, do you currently have theft charges pending against you here in Wichita County?

[Ysasi:]    I --

[The State:]    Objection, Your Honor.    It's improper impeachment.

The Court:    Sustained.

[Defense Counsel:]  All right.  Ms. Ysasi, back in 2001, you said you met Harry Marten the one time at the car wash?

Although evidence of a pending charge against Ysasi may be admissible to show improper motive or bias, Pritchard, as the proponent of the evidence, did not argue that evidence of the pending charge should be admissible for that purpose or otherwise establish a causal connection or logical relationship between the pending charges and Ysasi's "vulnerable relationship" or potential bias or prejudice for the State. *See Carpenter*, 979 S.W.2d at 634; *see also Moreno v. State* 587 S.W.2d 405, 410–11 (Tex. Crim. App. 1979) (holding that no error was shown when appellants did not "urge[] the trial court to allow them to introduce the indictment [against the State's witness] to show bias, prejudice, interest, etc., as now urged on appeal"); *Robinson v. State*, 681 S.W.2d 288, 289 (Tex. App.—San Antonio 1984, pet. ref'd) (holding that no

13

error was shown when appellant failed to perfect a bill of exceptions and failed to advise court that his cross-examination concerning prior arrests of witness was for the purpose of showing bias, prejudice, interest, or motive). Under controlling case law, Pritchard's "naked assertions" of bias on appeal are not sufficient to meet his burden. *See Carpenter*, 979 S.W.2d at 634 n.4 ("Naked allegations which do no more than establish the fact that unrelated . . . charges are pending do not, in and of themselves, show a potential for bias."). Consequently, we hold that the trial court did not abuse its discretion by not allowing defense counsel to cross-examine Ysasi about a pending charge against her. We overrule Pritchard's second point.

## V. Conclusion

Having overruled Pritchard's three points, we affirm the trial court's judgment.

SUE WALKER
JUSTICE

PANEL: CAYCE, C.J.; GARDNER and WALKER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: January 15, 2009

14